# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 22-855V

| | |
|---|---|
| NANCY HUGHES,<br><br>      Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>      Respondent. | Chief Special Master Corcoran<br><br>Filed: October 23, 2025 |

*Catherine Wallace Costigan, Mctlaw, Washington, DC, for Petitioner.*

*Michael Bliley, U.S. Department of Justice, Washington, DC, for Respondent.*

### RULING ON ENTITLEMENT[1]

On August 4, 2022, Nancy Hughes filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a left shoulder injury related to vaccine administration ("SIRVA") caused by an influenza ("flu") vaccine administered on September 9, 2020. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters. For the reasons set forth below, I find that Petitioner is entitled to compensation.

---

[1] In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

I.     **Relevant Procedural History**

On June 14, 2024, Respondent filed a Rule 4(c) Report opposing compensation. ECF No. 36. Specifically, Respondent argues that the medical records do not reflect onset of shoulder pain within 48 hours of vaccination. *Id.* at 7. On June 21, 2024, Petitioner filed a Motion for a Ruling. Memorandum of Law in Support of Finding of Fact and Conclusions of Law ("Mot."), ECF No. 38. Respondent opposed the motion on October 8, 2024, reiterating the arguments set forth in the Rule 4(c) Report. Respondent's Response to Petitioner's Motion for a Ruling on the Record ("Opp."), ECF No. 40. Petitioner filed a reply on October 15, 2024. Petitioner's Reply to Respondent's Response to Petitioner's Motion for a Ruling on the Record ("Reply"), ECF No. 41. The matter is ripe for resolution.

II.    **Petitioner's Medical Records**

Petitioner received the flu vaccine on September 9, 2020. Ex. 9 at 1. Six weeks later, on October 23, 2020, Petitioner saw an oncologist following up on a previous bilateral mastectomy. Ex. 12 at 87. She did not report any shoulder pain at that time. *Id.*

Petitioner first complained of shoulder pain on November 3, 2020, to her primary care physician (Dr. Laura Khandagle). Ex. 10 at 9. Dr. Khandagle noted that Petitioner "had an old shoulder injury 20 years ago, got the flu vaccine and since then it was sore." *Id.* Petitioner opted to see if her symptoms improved instead of formal treatment. *Id.*

On December 31, 2020, and January 11, 2021, Petitioner sought care for COVID-19 related concerns, including a test and symptoms. Ex. 4 at 4; Ex. 12 at 90. She did not report shoulder problems during those visits.

Petitioner saw her endocrinologist on January 30, 2021, for hypothyroidism and hyperlipidemia. Ex. 31 at 15. The record notes that Petitioner "[t]alks about her shoulder related injury from flu vaccine administration. Seems genuinely concerned." *Id.* at 16.

Petitioner returned to Dr. Khandagle on February 5, 2021, for hypertension. Ex. 10 at 6. There is no indication that she reported shoulder pain at that time.[3]

On April 26, 2021, Petitioner reported left shoulder pain "due to possibly receiving the flu shot in her joint." Ex. 12 at 95. Petitioner followed up with an orthopedic surgeon, Dr. Kristien Monaghan, on May 12, 2021. Ex. 3 at 10. The record notes that Petitioner "got … [a] shot on 9/9/2020, however believes it was not given right and has had pain

---

[3] Petitioner kept a medical journal and submitted entries from October 26, 2018 through February 10, 2022. Ex. 19. The entry from February 5, 2021, includes a reference to arm pain. *Id.* at 10.

2

since." *Id.* A physical examination showed left shoulder impingement. *Id.* at 11. She was diagnosed with tendinitis and subacromial impingement of her left shoulder. *Id.*

Petitioner had an MRI of her left shoulder on May 17, 2021. Ex. 3 at 22. It showed tendinosis, mild to moderate degeneration in the acromioclavicular joint, and bursitis. *Id.* She returned to Dr. Monaghan on May 20, 2021, for "left shoulder pain [] occurred on 9/9/2021 (sic)" that was worsening. *Id.* at 14. She received a steroid injection and referred to physical therapy. *Id.*

Between May 24 and July 8, 2021, Petitioner attended 13 physical therapy sessions. Ex. 16 at 18, 62. She began treating at a different facility on July 14, 2021, and attended 77 physical therapy sessions between July 14, 2021, and April 15, 2022. Ex. 23 at 17. In the pre-examination form dated July 12, 2021, Petitioner stated that she has had pain "since flu shot 9/9/2020." Ex. 23 at 5. She also stated she had shoulder pain since "a flu shot in Sept 2020…." *Id.* at 185.

Petitioner reported improvement in both pain and range of motion at follow-up appointments with Dr. Monaghan in August, September, and October 2021. Ex. 3 at 20; Ex. 18 at 1; Ex. 13 at 1. By October 21, 2021, her pain was only one out of ten, and she was "doing much better." A physical exam showed she had a full range of motion and was instructed to follow-up as needed. Ex. 13 at 1, 2. At her last physical therapy session on April 15, 2022, Petitioner reported her pain was zero out of ten, and she was discharged with a home exercise plan. Ex. 23 at 17.

On December 28, 2022, Petitioner reported recurring left shoulder pain (Ex. 34 at 9) and she returned to physical therapy for four additional sessions between December 28, 2022 and January 13, 2023. Ex. 35 at 11.

Petitioner, a nurse by trade, submitted a declaration in support of her petition. Ex. 28. She stated that her arm pain developed the night after her vaccination. *Id.* at 1. Further, she delayed in seeking treatment because she knew "that vaccines can sometimes cause temporary pain and discomfort" and she "waited to see if the pain would subside, but it didn't." *Id.* at 2.

### III.   Fact Findings and Ruling on Entitlement

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). In addition to requirements concerning the vaccination received, the

3

duration and severity of petitioner's injury, and the lack of other award or settlement,[4] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.*, NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally

---

[4] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* § 11(c)(1)(A)(B)(D)(E).

contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are always accurate and complete as to all of the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021). Medical professionals may not "accurately record everything" that they observe or may "record only a fraction of all that occurs." *Id.*

Medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

### A. Factual Findings Regarding a Table SIRVA

After a review of the entire record, I find that a preponderance of the evidence supports the conclusion that Petitioner has satisfied the QAI requirements for a Table SIRVA.

#### 1. Petitioner Had No Prior Left Shoulder Condition or Injury that would Explain her Symptoms

The first requirement for a Table SIRVA is a lack of problems associated with the affected shoulder prior to vaccination that would explain the symptoms experienced after vaccination. 42 C.F.R. § 100.3(c)(10)(i). Respondent does not dispute that Petitioner meets this criterion. I find that she has demonstrated a lack of history of pain, inflammation, or dysfunction of her left shoulder that would explain her symptoms.

#### 2. Onset of Petitioner's Injury Occurred within Forty-Eight Hours of her Vaccination

The medical records preponderantly establish onset of injury close-in-time to vaccination. Petitioner first reported shoulder pain on November 3, 2020, approximately

5

two months after her vaccination. Ex. 10 at 9. Further, she consistently linked her shoulder pain to the flu shot. Ex. 10 at 9 (record from November 3, 2020, stating Petitioner "got the flu vaccine and since then it was sore"); Ex. 31 at 16 (record from January 30, 2021 stating Petitioner "[t]alks about her shoulder related injury from flu vaccine administration"). at 1-6 (record from November 18, 2020 stating that Petitioner had initial soreness after the flu vaccine that "worsened to point that he had difficulty using" his right arm") Ex. 3 at 10 (record from April 26, 2021 stating Petitioner "got … [a] shot on 9/9/2020, however believes it was not given right and has had pain since").

Respondent argues that Petitioner did not mention shoulder pain at her October 23, 2020 appointment with her oncologist. Opp. at 7. However, it is not surprising that a patient would not mention a shoulder problem when meeting with a specialist for a completely different reason - in this case an oncologist for follow-up related to breast cancer. Further, a finding of proper onset can be made based on the overall record. Program petitioners are not required to marshal records setting forth with chronographic specificity the precise day and hour that their onset manifested. Petitioner argues that she waited to seek treatment hoping the pain would subside. Ex. 28 at 2. It is common for SIRVA petitioners to delay seeking treatment, thinking the injury will resolve on its own, especially since patients are often told by medical providers at the time of vaccination to expect some soreness and pain for a period of time after. And Petitioner's nursing education likely also encouraged her to avoid unnecessary medical treatment. Ex. 28 at 1, 2.

Accordingly, there is preponderant evidence that establishes the onset of Petitioner's left shoulder pain more likely than not occurred within 48-hours of vaccination.

### 3. Petitioner's Pain was Limited to her Vaccinated Shoulder

Respondent does not dispute that Petitioner meets this criterion. I find that Petitioner's pain was limited to her left shoulder.

### 4. There is No Evidence of Another Condition or Abnormality

The last criteria for a Table SIRVA state that there must be no other condition or abnormality which would explain a petitioner's current symptoms. 42 C.F.R. § 100.3(c)(10)(iv). Respondent does not contest this aspect of Petitioner's claim, and there is nothing in the records to suggest that any such condition or abnormality exists.

### B. Other Requirements for Entitlement

In addition to establishing a Table injury, a petitioner must also provide preponderant evidence of the additional requirements of Section 11(c). Respondent does not dispute that Petitioner has satisfied these requirements in this case, and the overall record contains preponderant evidence to fulfill these additional requirements.

That record shows that Petitioner received a flu vaccine intramuscularly on September 9, 2020, in the United States. Ex. 9 at 1; *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i)(I) (requiring administration within the United States or its territories). There is no evidence that Petitioner has collected a civil award for her injury. Ex. 27; Section 11(c)(1)(E) (lack of prior civil award).

Based upon all of the above, Petitioner has established that she suffered a Table SIRVA. Additionally, she has satisfied all other requirements for compensation. I therefore find that Petitioner is entitled to compensation in this case.

### Conclusion

**In view of the evidence of record, I find that there is preponderant evidence that Petitioner satisfies the severity requirement and the QAI requirements for a Table SIRVA. Further, based on the evidence of record, I find that Petitioner is entitled to compensation.**

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master
